IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ABNER DEWAYNE COLLINS,
Deceased; et al.,                                              Civil No. 02-3054-CO

        Plaintiffs,                  ORDER AND
                                                       FINDINGS AND RECOMMENDATION

   v.

JACKSON COUNTY; et al.,

        Defendants.

COONEY, Magistrate Judge:

    In this civil rights action, plaintiffs include the following claims for relief: § 1983 denial of appropriate medical attention under the Fourteenth Amendment, § 1983 supervisory liability of defendant Sheriff Kennedy, § 1983 governmental liability, deprivation of Fourteenth Amendment due process liberty interest to life by decedent's estate, deprivation of Fourteenth Amendment due process liberty interest by decedent's wife, deprivation of Fourteenth Amendment due process liberty interest by decedent's son, and pendent state claim for wrongful death / negligence under ORS 30.020 through 30.100 against Jackson County. Plaintiffs seek economic and noneconomic damages, punitive damages, and

attorney's fees.[1] This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Before the court are defendants' motion for summary judgment (#101), defendants' motion to strike included in their reply brief (#133), and plaintiffs' motion to strike defendants' motion to strike incorporated in defendants' reply (#141).

**I. FACTS**

In making the following findings of fact, the court construes the facts in the light most favorable to the non-movant[2]:

1. All operations of the Jackson County jail were under the direct supervision of the Sheriff with the exception of prisoner health care services which were provided by Jackson County Health and Human Services (JCHHS) pursuant to a cooperative agreement. Sheriff Kennedy's responsibilities included the safety and security of all jail facilities as well as the general care of inmates. Sheriff Kennedy was jointly responsible with JCHHS for the medical practices at the jail. Health care staff were hired, trained and supervised by JCHHS. (Kennedy Aff. ¶ 2).

2. In 2000, Jackson County jail did not have health care staff on duty in the jail around-the-

---

[1] Plaintiff Robert Collins and defendants Britton and Tijerina have been dismissed from the case (#73, 83, 81, 94).

[2] Plaintiffs complied with Local Rule 56.1(b) by filing a response to defendants' concise statement, but did not comply with Local Rule 56.1(c), which requires that a party cite to particular evidence supporting the denial of a fact. Local Rule 56.1(e) provides: "**Scope of Judicial Review**. Except as otherwise required by law, when resolving a motion for summary judgment, the court has no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties." Because defendants' facts are not specifically controverted by plaintiffs in their response to defendants' concise statement of facts, defendants' facts are set forth by the court as the undisputed facts for purposes of summary judgment, see Local Rule 56.1(f), with modifications to Facts #7 and #9 made by the court.

clock. After hours, an on-call nurse employed by JCHHS was assigned to cover the jail. (Kennedy Aff. ¶ 4; McElreath Aff. ¶¶ 1, 2).

3. On Saturday, June 24, 2000, Abner Dewayne Collins was arrested for possession of methamphetamine, a controlled substance, and for giving false information regarding liability insurance. (Tuenge Aff. ¶ 2 and Ex. A attached thereto).

4. As part of the booking process at the Jackson County jail, Collins was screened with respect to his needs. The purpose of the initial screening is to identify any obvious or inmate reported emergency or urgent medical or medication needs. (Kennedy Aff. ¶¶ 5-7).

5. Collins was screened by Deputy Mary Shaw, a corrections officer with health training including current first-aid and CPR training, training in completion of the receiving screening form, training in recognizing the need for emergency care and acute manifestations of chronic conditions, and training in procedures for appropriate referral of detainees to health professionals. (Kennedy Aff. ¶¶ 5, 7).

6. Deputy Shaw documented on the Receiving Screening Questionnaire (RSQ) that Collins was oriented to date, time, and place, was cooperative, did not have an impaired level of consciousness and did not appear intoxicated. Shaw did not observe any visible signs of trauma or illness requiring immediate medical attention. Collins had no obvious fever, jaundice or rash. Collins reported a past medical history of hypertension. Collins reported he was taking the following medications: "prilosec, frolic [sic] acid, carafate, sponolactoate [sic], lasix and inderal." Collins reported he took Inderal for his blood pressure, stomach and liver. He did not bring any medications with him to the jail. Deputy Shaw advised Collins how to get medical care while in jail. The RSQ was completed at 1600 hours on June 24,

2000. (Kennedy Aff. ¶ 7 and Ex. 3 attached thereto).

7. Shaw advised her supervisor, Deputy Farmer, that Collins had cirrhosis of the liver, was taking six medications and needed some that evening. Deputy Farmer contacted the on-call nurse, Norene McElreath, by telephone at approximately 4:00 p.m. about Collins' request. Nurse McElreath was told Collins had cirrhosis of the liver, was taking six medications and needed some that evening. Nurse McElreath states in her affidavit that she would have asked questions about Collins' medical history, condition and medications. Based upon her knowledge, training and information, she made a judgment that Collins could wait until Monday to get his medications. She did not think that missing a day or two of these medications would cause Collins' chronic condition to become acute or life-threatening. At most, she thought he might retain some water. Nurse McElreath advised that Collins should be seen by medical staff on Monday. (Kennedy Aff. ¶ 8 and Ex. 4 attached thereto; McElreath Aff. ¶¶ 4-7).

8. Shaw and Farmer followed the pertinent policies and procedures with respect to booking, notified the on-call nurse of Collins' condition and medication request, and had no reason to question the judgment of the on-call nurse. (Kennedy Aff. ¶ 9).

9. According to Sheriff Kennedy, Collins would have been visually checked by a deputy at least once an hour over the weekend as part of routine safety and welfare checks. Jackson County Sheriffs Office has in place policies and procedures requiring deputies to perform security and welfare checks and the deputies are trained to do the checks. Any unusual occurrences, such as illness or emergency medical conditions, were required to be documented. There is no documentation of any change with respect to Collins' condition

until Monday, June 26, 2000. (Kennedy Aff. ¶¶ 11, 12, 16).

10. On Monday morning, Nurse Practitioner Mayfield identified Collins as an inmate who needed medical screening. Pursuant to Jackson County jail health policies and procedures, Mayfield went to Collins' cell and called his name. Collins did not respond and was noted to be sleeping which was not unusual. (Mayfield Aff. ¶ 3-5).

11. At approximately 10:30 to 11:00 a.m., Mayfield was contacted by a deputy about a change in Collins' medical condition. Mayfield stopped sick call and saw Collins. Collins was feeling poorly and appeared toxic and Mayfield thought Collins may have crashed from methamphetamine use. Mayfield ordered Collins to be sent to a holding cell for observation every 15 minutes. Collins' condition did not appear to be urgent or emergent and Mayfield thought Collins could wait until he completed sick call, approximately 30 minutes to one hour to have a full assessment. Collins arrived in holding at 11:15 p.m. and was checked every 15 minutes as ordered. At approximately 11:30 to 11:45 a.m., Mayfield completed sick call and went to assess Collins. As Collins was standing up, he passed a large, tarry stool. At that time, it became apparent Collins was having an acute gastrointestinal bleed and emergency medical services were requested. (Kennedy Aff. ¶ 15; Mayfield Aff. ¶¶ 7-9).

12. A review of documents has been made and there are no inmate requests for medical care by Collins during his incarceration of June 24 through June 26, 2000. (Kennedy Aff. ¶ 16).

13. On June 26, 2000, Collins was transported to Providence Medical Center in Medford where he was ultimately diagnosed with an acute bleed from his "huge gastric varices." The endoscopy was done by Dr. Walker who did not find any evidence of esophageal varices. (Tuenge Aff. ¶ 5 and Ex. D attached thereto).

14. On June 29, 2000, Collins was transported from Providence Medford to Oregon Health Sciences University for a transjugular intrahepatic portosystemic shunt (TIPS) procedure. Collins suffered from complications from the TIPS procedure and died on July 6, 2000 at Oregon Health Sciences University. (Tuenge Aff. ¶¶ 5,6 and Ex. D, E attached thereto).

## II. LEGAL STANDARD

A moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact . . . ." Fed. R. Civ. P. 56(c); Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002).

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002), cert. denied, 537 U.S. 1106 (2003).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995);

6 - ORDER AND FINDINGS AND RECOMMENDATION

see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986). If the moving party presents evidence which, taken by itself, would establish the right to a directed verdict at trial, the motion for summary judgment must be granted, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

### III. DISCUSSION

Defendants assert the following grounds for summary judgment: plaintiffs cannot establish that any act or omission of defendants was the cause in fact and proximate cause of any injury to decedent Collins or his death; defendant McElreath is entitled to summary judgment because she was not deliberately indifferent to any serious medical needs of decedent Collins; defendant McElreath is entitled to qualified immunity; defendant Mayfield is entitled to summary judgment because he was not deliberately indifferent to any serious medical needs of decedent Collins; and defendant Mayfield is entitled to qualified immunity. Defendant contend that defendant Kennedy is entitled to summary judgment on plaintiff's claim for supervisory liability because there are no allegations that he personally participated in Collins' incarceration or that he knew or should have known of any deficiency in training or supervision relating to screening of inmates for medical needs and obtaining medical care

7 - ORDER AND FINDINGS AND RECOMMENDATION

while incarcerated, and because he was not the supervisor of the health care staff at the Jackson County Jail; defendant Kennedy is entitled to qualified immunity and defendant Jackson County is entitled to summary judgment as to plaintiff's municipal liability claims because plaintiff cannot prove any constitutional violation by any Jackson County employee. They contend that plaintiffs' claim for violation of decedent Collins' substantive due process rights fails because the claim fails to state a separate claim for relief and is duplicative of his first three claims; and plaintiff Lillian Collins' claim for deprivation of her Fourteenth Amendment substantive due process rights fails because there is no specific intent by defendant since there is no evidence that defendants knew or had any reason to know of the marital relationship between plaintiff Lillian Collins and decedent Collins at the time he was incarcerated. Defendants finally contend that defendant Jackson County is entitled to summary judgment on plaintiffs' claim for wrongful death because plaintiffs cannot establish any act or omission of defendants was a substantial factor in causing decedent Collins any injury or death as required in an action for wrongful death for alleged negligence under ORS 30.020, and because the screening and care of decedent Collins met the applicable standard of care, and plaintiff does not allege any specific negligence with regard to County policies or training or supervision.

Plaintiffs assert in response that defendants focus on the rebleeding aspect related to decedent Collins' death, but that Collins also suffered from encephalopathy and edema. Plaintiffs contend that withholding medication for the treatment of advanced liver cirrhosis significantly increased the chances of mortality for decedent Collins; and the lack of medical observation and medical care after Collins was taken off his medication significantly

increased his risk for mortality. Plaintiffs point to defendants' and plaintiffs' evidence in support of an argument that the evidence contradicts defendants' contention that there is no evidence that withholding medications could have prevented the acute bleed and his resulting death. They contend that Dr. Jollo opines that the mechanism of death here is a function of the overall hemodynamic effect of the separate medications working in tandem and concludes that the acts and omissions of medical and correctional care were negligence and indifferent to reasonable medical care, and that Collins received substandard attention and medical care that ultimately caused death, (Jollo Aff.; Andersen Aff. Ex. 5). They point to Dr. Walker's opinion that deliberately withholding Collins' medications could result in the grave outcome and downward spiral that resulted in his death, (Walker Aff.; Andersen Aff. Ex. 6).[3] Plaintiffs also point to Dr. Larsen's affidavit in which he opines that there is a combined prophylactic effect through using all the medications Collins was prescribed and that withholding these medications would to a reasonable medical certainty ultimately lead to Collins' subsequent death, (Andersen Aff. Ex. 7). Plaintiff contends that nurse McElreath is not entitled to summary judgment because she violated multiple standards of care, the Nurse Practices Act, and Jackson County policy and procedures. Plaintiffs contend that nurse practitioner Mayfield was deliberately indifferent to Collins' serious medical needs, relying on the opinions of George Sullivan and Dr. Walker. Plaintiffs contend that Sheriff Kennedy is not entitled to summary judgment because he was jointly responsible for the implementation of policies and practices regarding provision of medical care, (Andersen Ex. 10 policies); and was responsible for the training, instruction, and supervision of jail staff,

---

[3] A supplemental Walker affidavit was filed after plaintiffs submitted their response.

(Andersen Ex. 10); and that Sheriff Kennedy was aware of the jail's failure to provide adequate policies and training to staff through law suits involving various deficiencies, (Andersen Aff. Ex. 11 Kennedy Dep.), including <u>Brood</u> and <u>Anderson</u>, after which the Sheriff and the County took the position that they had done no wrong, (Andersen Aff. Ex. 12). Plaintiffs assert that this wrongful death case arises from the same failures to provide adequately trained staff and to implement the same policies to provide necessary screening of inmates' prior medical records and to provide adequate staff to assess serious medical needs, (Andersen Aff. & Ex. 13). Plaintiffs assert that evidence of other bad acts is highly probative on the issues of municipal and supervisory liability. As to their claim of inadequate training and supervision, plaintiffs contend that the evidence, including that of Sheriff Kennedy, shows that no reprimands, training, or investigations resulted from complaints about police misconduct.[4] Plaintiffs contend that the County is not entitled to summary judgment on the wrongful death claim because plaintiffs have pleaded negligence and they raise a question of fact regarding causation and the responsibility of all defendants as to medical negligence in the treatment and the failure to provide appropriate polices, procedures, and training on appropriate care for serious medical needs. Plaintiffs argue that, at the time of the incident, it was clearly established that a pretrial detainee had a

---

[4] Plaintiffs include in their response an argument on Fourth Amendment rights and the use of excessive force; they contend that the evidence shows that the County was deliberately indifferent to decedent Collins' rights because, "in spite of the notice of officers' history of using excessive force or misconduct, officials refused and/or failed to take timely and adequate corrective action to prevent further constitutional violations by their officers." (Pls. Resp. at 15-16.) They also argue that liability exists because officials with final policy-making authority ratified the unconstitutional action by the County's failure or refusal to investigate citizen's complaints about excessive force. There is no excessive force claim in plaintiffs' complaint. See #23 Findings and Recommendation adopted by #25 Order.

constitutional right to medical treatment. Plaintiffs argue that defendants' contention that, not only must liability depend upon a subjective awareness that a substantial risk of harm exist, but that defendant "actually drew the inference," relying on Farmer v. Brennan, 511 U.S. 825, 837 (1994), is not an appropriate part of the standard; they argue that Farmer was a conditions of confinement and inmate violence to inmate case, which had a different focus and a higher standard than an Eighth Amendment medical needs case. As to plaintiff Lillian Collins' substantive due process claim, plaintiffs contend that there is no state of mind requirement in a § 1983 claim, and defendants' cases are distinguishable. Plaintiffs argue that the individual defendants are not entitled to qualified immunity because, taking the evidence in the light most favorable to plaintiffs, they raise genuine issues of material fact as to causation. They contend that, at the time of the incident, it was clearly established that a pretrial detainee had a constitutional right to medical treatment and that denial or delay of medical treatment for a prisoner's serious medical condition constitutes deliberate indifference. They contend that an individual will be held liable if he is aware of and disregards a substantial risk of harm to the detainee.

     As an initial matter, the court will address defendants' argument that plaintiffs cannot establish that any act or omission of theirs was the cause in fact and proximate cause of any injury to decedent Collins or the cause of his death. Plaintiffs offer the affidavits and supplementary affidavits of Dr. Walker and Dr. Jollo, in which they opine that, to a reasonable medical certainty, the withholding of decedent Collins' prescribed medications

while in jail, caused decedent's death. The court has considered defendants' motion to strike[5] the Walker and Jollo affidavits and overrules their motion as to these affidavits.[6] Accordingly, defendants' motion for summary judgment on this ground should be denied.

Defendants McElreath and Mayfield claim that they are entitled to qualified immunity as to plaintiffs' Fourteenth Amendment claim of denial of appropriate medical attention. Qualified immunity shields government agents from suit for damages if a reasonable official could have believed that his or her conduct was lawful, in light of clearly established law and the information possessed by the official. Anderson v. Creighton, 483 U.S. 635, 637-39, 641 (1987); Hunter v. Bryant, 502 U.S. 224 (1991) (per curiam). This standard shields all government officials except those who are either plainly incompetent or who knowingly violate the law. Malley v. Briggs, 475 U.S. 335, 341 (1986). To determine if a defendant is entitled to qualified immunity, the court employs the sequential analysis set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001).

First, the court must ask whether the facts alleged by plaintiff, taken in the light most favorable to plaintiff, establish a constitutional violation. Id. at 201; Robinson v. Solano County, 278 F.3d 1007, 1013 (9th Cir. 2002) (en banc). If no constitutional right would have

---

[5] Plaintiffs move to strike defendants' motion to strike incorporated in their reply (#141). Although included in defendants' reply brief, the court allowed plaintiffs an opportunity to respond to defendants' motion and, therefore, plaintiffs' motion to strike is denied.

[6] Defendants argue in their motion that the Walker and Jollo affidavits should be stricken as a sanction for failure to timely disclose expert testimony. Following the filing of this motion, the court denied defendants' motion to dismiss on this ground (#140 Findings and Recommendation adopted by #149 Order), and defendants did not argue this basis at the hearing on their motion for summary judgment.

12 - ORDER AND FINDINGS AND RECOMMENDATION

been violated under the facts alleged, then the analysis ends. Saucier, 533 U.S. at 201. If a violation could be established under the facts alleged, the court will then consider whether the right was clearly established. Id.; Robinson, 278 F.3d at 1013. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. The court must determine whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. at 202. If the law does not put an officer on notice that his conduct was clearly unlawful, summary judgment based on qualified immunity is appropriate. Id.

A pretrial detainee's rights are grounded in the Due Process Clause, but courts use the standards developed from Eighth Amendment jurisprudence when analyzing pretrial detainee rights. Cabrales v. County of Los Angeles, 864 F.2d 1454, 1461 n.2 (9th Cir. 1988), vacated, 490 U.S. 1087, reinstated, 886 F.2d 235 (9th Cir. 1989). The Fourteenth Amendment imposes a constitutional obligation upon the government to provide medical care for those it incarcerates. McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997); Delker v. Maass, 843 F. Supp. 1390, 1398 (D. Or. 1994). The government deprives an incarcerated individual of due process rights if government officials are deliberately indifferent to the individual's serious medical needs, which satisfies the Eighth Amendments proscription of "'unnecessary and wanton infliction of pain.'" Estelle v. Gamble, 429 U.S. 97, 104 (1976); Delker, 843 F. Supp. at 1398, 1400. Deliberate indifference requires a "purposeful act or failure to act on the part of the defendant," and not insubstantial harm. McGuckin, 974 F.2d at 1060. Deliberate indifference requires a subjective approach; the official must know of

and disregard an excessive risk to an inmate's health. Farmer v. Brennan, 511 U.S. 825, 837-39 (1994). The Farmer Court determined that the deliberate indifference standard for Eighth Amendment purposes is a subjective standard:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837. In the context of serious medical needs, "[d]eliberate indifference requires, at a minimum, that the defendant thought about the matter (deliberated) and chose to ignore it." Delker, 843 F. Supp. at 1400 (citing Wilson v. Seiter, 501 U.S. 294, 300 (1991)). Deliberate indifference to serious medical needs may be manifested in two ways: "It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988); Delker, 843 F. Supp. at 1400-01. Negligence or malpractice, or inadvertent failure to provide adequate medical care does not establish the requisite culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hutchinson, 838 F.2d at 394; Delker, 843 F. Supp. at 1398; Gamble, 429 U.S. at 105.

The parties do not dispute that decedent Collins had a serious medical need at any of the times at issue while incarcerated at the Jackson County jail. Defendants contend that neither defendant McElreath nor defendant Mayfield were deliberately indifferent to any serious medical need of decedent. The court has reviewed all of the evidence cited by plaintiffs in their response to defendants' motion and at the telephone hearing on the motion on the issue of defendant McElreath's and Mayfield's liability. Despite plaintiffs' assertions,

14 - ORDER AND FINDINGS AND RECOMMENDATION

the court finds that plaintiffs offer no evidence which supports their argument that defendants were deliberately indifferent to decedent's needs which would controvert the undisputed facts that defendant McElreath, after learning that Collins had cirrhosis of the liver and needed his six medications that evening, she made a judgment that Collins could wait until Monday to get his medications based upon her knowledge, training and information; that she did not think that missing a day or two of these medications would cause Collins' chronic condition to become acute or life-threatening, and, at most, she thought he might retain some water. Nor do plaintiffs point to any evidence which controverts the undisputed facts that, on Monday morning, defendant Mayfield went to Collins' cell and Collins did not respond when his name was called, and was noted to be sleeping which was not unusual; that when Mayfield was contacted by a deputy about a change in Collins' medical condition at approximately 10:30 to 11:00 a.m., Mayfield stopped sick call and ordered Collins to be sent to a holding cell for observation every 15 minutes because Collins was feeling poorly and appeared toxic which Mayfield thought was due to a crash from methamphetamine use, and his condition did not appear to be urgent or emergent and Mayfield thought Collins could wait until he completed sick call, approximately 30 minutes to one hour, to have a full assessment; and that Mayfield completed sick call and went to assess Collins at approximately 11:30 to 11:45 a.m., at which time it became apparent that Collins was having an acute gastrointestinal bleed and emergency medical services were requested. These facts do not suggest that either defendant McElreath or defendant Mayfield subjectively knew of an excessive risk to Collins' health and disregarded it. The Ninth Circuit has stated in considering a Fourteenth Amendment medical needs case that,

> In order to know of the excessive risk, it is not enough that the person merely "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, [] he must also draw that inference." If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk.

Gibson v. County of Washoe, 290 F.3d 1175, 1188 (quoting Farmer, 511 U.S. at 837; and citing Jeffers v. Gomez, 267 F.3d 895, 914 (9th Cir. 2001)); Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). "This 'subjective approach' focuses only 'on what a defendant's mental attitude actually was.'" Toguchi, 391 F.3d at 1057 (quoting Farmer, 511 U.S. at 839). On this record, the court finds that plaintiffs fail to raise a genuine issue of material fact as to whether either defendant McElreath or defendant Mayfield was deliberately indifferent to decedent Collins' serious medical needs. Plaintiff does not show that decedent's constitutional right to medical care for serious medical needs was violated by defendants McElreath or defendant Mayfield. On the threshold inquiry of whether, taking the facts alleged by plaintiffs in the most favorable light, plaintiffs have established a constitutional violation, the court has found that no constitutional violation is shown on the record. Accordingly, the qualified immunity analysis ends. Defendants' motion for summary judgment as to defendant McElreath and defendant Mayfield should be granted.

Defendants contend that defendant Kennedy is entitled to summary judgment on plaintiffs' claim of supervisory liability. Supervisory officials are not liable, under section 1983, for actions of subordinates based on a theory of vicarious liability. Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989). A supervisor may be liable under section 1983 if: (1) the supervisor was personally involved in the alleged constitutional deprivation; or (2) the supervisor implements a policy that is itself a "repudiation of constitutional rights," and is

the moving force behind the alleged constitutional violation. Hansen, 885 F.2d at 646, (quoting Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987)).

Here, the court has found that plaintiffs have not shown that there was a constitutional violation on the record before the court and, therefore, plaintiffs do not satisfy the prerequisite for a finding of supervisory liability. See Hansen, 885 F.2d at 646. On this record, defendants' motion for summary judgment as to defendant Kennedy should be granted.

Defendants contend that defendant Jackson County is entitled to summary judgment. Municipalities are not liable under respondeat superior principles for constitutional violations of their employees, simply because of the employment relationship. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 692-694 (1978). Municipal liability results "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." Id. at 694; Mateyko v. Felix, 924 F.2d 824, 826 (9th Cir.1991). A municipality can be liable only when its policy or custom is the moving force behind the particular constitutional violation. Id. There must be a direct causal link between the policy or custom and the alleged constitutional violation. City of Canton v. Harris, 489 U.S. 378, 385 (1989). The inadequacy of training may be a basis for county liability only where the failure to train amounts to deliberate indifference to the rights of citizens, that is, in light of the municipal employee's duties, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need. Id. at 390.

17 - ORDER AND FINDINGS AND RECOMMENDATION

Because the court has found that the record does not support a finding that any constitutional violation took place, there is no basis for a claim against Jackson County. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994). Defendants' motion for summary judgment as to defendant Jackson County should be granted.

The court has already found that plaintiffs' fourth claim alleging a Fourteenth Amendment substantive due process claim for deprivation of decedent Collin's right to life asserted by the estate states a cognizable claim for relief (#23 Findings and Recommendation adopted by #25 Order). Therefor, defendants' motion for summary judgment based on their argument that plaintiffs fail to state a claim should be denied. Plaintiffs' claim is based on defendants' alleged failures to provide for decedent's serious medical needs in their actions and inactions, including failures in policies and training. However, because the court has found that no constitutional violation by defendants occurred, defendants' motion for summary judgment as to plaintiffs' fourth claim should be granted.

For this same reason, plaintiffs' fifth claim alleging a Fourteenth Amendment due process liberty interest claim in the companionship and association of her husband asserted by plaintiff Lillian Collins cannot survive summary judgment. See Moreland v. Las Vegas Metro. Police Dept., 159 F.3d 365, 371-73 (9th Cir. 1998); Byrd v. Guess, 137 F.3d 1126, 1134 (9th Cir. 1998), abrogated on another ground as stated in Moreland v. Las Vegas Metro. Police Dept., 159 F.3d 365 (9th Cir. 1998).

In conclusion, plaintiffs fail to raise a genuine issue of material fact on the record before the court which would support a finding that a constitutional violation occurred as to

18 - ORDER AND FINDINGS AND RECOMMENDATION

decedent Collins. Accordingly, defendants' motion for summary judgment should be granted as to all federal claims pleaded by plaintiffs, plaintiffs' first through sixth claims,[7] and these claims should be dismissed.

Plaintiffs also allege a pendent state claim for wrongful death based on negligence. At the hearing on defendants' motion, defendants argued that, if the Jollo and Walker affidavits were considered by the court, there is evidence, at most, of negligence. The court may decline to exercise supplemental jurisdiction over a state claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); Ove v. Gwinn, 264 F.3d 817, 826 (9th Cir. 2001) (citing San Pedro Hotel Co., Inc. v. City of Los Angeles, 159 F.3d 470, 478 (9th Cir.1998)). The court may dismiss without prejudice supplemental state claims. Brown v. Lucky Stores, Inc. 246 F.3d 1182, 1189 (9th Cir. 2001). Here, the court recommends dismissal of all federal claims over which it has original jurisdiction. Still pending before the court is plaintiffs' seventh supplemental state claim for wrongful death / negligence, ORS 30.020 through 30.100, against defendant Jackson County. The court exercises its discretion to decline supplemental jurisdiction over plaintiffs' remaining supplemental state claim. Plaintiffs' seventh state claim should be dismissed without prejudice to refiling in state court.

## IV. ORDER

It is ordered that defendants' motion to strike included in their reply (#133) is denied in part as stated herein, and the remainder of their motion is denied as moot; and that

---

[7] Plaintiff's sixth claim is brought by plaintiff Robert Collins, who has been dismissed from the case.

plaintiffs' motion to strike defendants' motion to strike incorporated in their reply (#141) is denied.

## VI. RECOMMENDATION

Based on the foregoing, it is recommended that defendants' motion for summary judgment (#101) be granted, and that judgment be entered dismissing plaintiffs' first through sixth claims with prejudice and dismissing plaintiffs' seventh pendent state claim without prejudice.

***This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten days within which to file a response to the objections*. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.**

DATED this ___14____ day of November, 2005.

_____/s/_____
UNITED STATES MAGISTRATE JUDGE